CHARLES E. KECK, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Keck v. Commissioner
Docket Nos. 2361-91, 2893-91, 2900-91
United States Tax Court
T.C. Memo 1993-538; 1993 Tax Ct. Memo LEXIS 546; 66 T.C.M. (CCH) 1361; 18 Employee Benefits Cas. (BNA) 1560; November 18, 1993, Filed *546 Decision will be entered for respondent in docket No. 2361-91 except for the concession of the addition to tax under sec. 6661. Decision will be entered for respondent in docket No. 2893-91. Decision will be entered for petitioner in docket No. 2900-91. For petitioner in docket No. 2361-91: Bruce N. Crawford. For petitioners in docket No. 2893-91: Thomas I. Hara. For petitioner in docket No. 2900-91: David R. Brennan, Peter J. Withoff, and John K. Steffen. For respondent: Jack Forsberg. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined income tax deficiencies and additions to tax for petitioner Charles E. Keck (Keck) and petitioner Richard H. Kohout (Kohout) for their 1985 taxable year as follows: Addition to Tax
Petitioner
Deficiency Sec. 6661
Keck
$ 92,505.60
$ 22,193
Kohout
$ 92,383.07
-- Respondent determined deficiencies for petitioner SD-Scicon, Inc.'s (SD-Scicon) taxable years ending October 31, 1983, and December 31, 1985, in the amounts of $ 249,403 and $ 141,726.92, respectively. All section references are to the Internal Revenue Code in effect *547 for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Keck conceded the portion of the deficiency related to the characterization of certain losses for the 1985 taxable year, and respondent conceded the additions to tax under section 6661. Respondent also conceded that, under the consolidated return regulations, SD-Scicon is not liable for the deficiency determined for its taxable year ending October 31, 1983. The remaining issues for consideration are (1) whether the stock bonuses received by Keck and Kohout were compensation or gifts; and (2) whether SD-Scicon, Inc., can deduct the stock bonuses paid as wage expense. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of filing the petitions, Keck resided in St. Louis Park, Minnesota, Richard H. and Janice E. Kohout resided in Bloomington, Minnesota, and SD-Scicon, a Delaware corporation, had its principal place of business in Pequot Lakes, Minnesota. At all relevant times, SD-Scicon has been a wholly owned subsidiary of Systems Designers International *548 plc (SDI), a British corporation. In the mid-sixties, Keck, Kohout, and Ed Warrington (Warrington) were employees at First Bank Systems. In 1967, Warrington started Warrington Associates, Inc. (WAI). WAI started as a contract computer programming business, mainly for the banking industry, but eventually expanded to include the sale of software packages and data processing services. Kohout started working for WAI as a computer programmer in 1969 as its fourth employee. Keck started working for WAI as a computer programmer in 1970 and was WAI's sixth employee. By the end of 1984, WAI had over 100 employees. Warrington was chairman and the sole director, Keck was a senior vice president and director of programming, and Kohout was also a senior vice president and director of planning. Charles R. Gesme (Gesme) was president and had been since 1983. WAI developed a software program called Bond On-Line Trading (BOLT) which basically did the back office work for the bond department of a bank. BOLT was a commercially successful software program for WAI, and Keck and Kohout were instrumental in its development. The BOLT program helped launch the service bureau portion of WAI, in *549 which WAI ran the software on its own computers for the clients. The service bureau grew into the majority of WAI's business. Prior to January 28, 1985, Warrington was the sole director of WAI and the beneficial owner of all outstanding stock of WAI. On several occasions during the course of their employment, Keck and Kohout expressed to Warrington that they would like stock in WAI. Warrington never promised to give them stock, but he did say that they would be taken care of if the company was sold or went public. Warrington did allow senior employees, including Keck and Kohout, to participate in the Old Timers Partnership. The Old Timers Partnership was a profitable equipment purchase and lease-back arrangement, in which the partnership would borrow money to purchase equipment and then lease the equipment back to WAI. On December 13, 1984, Warrington signed a letter of intent for the proposed sale of all the outstanding stock of WAI to SDI. On January 28, 1985, Warrington, as sole director and shareholder of WAI, executed a Joint Unanimous Written Consent of Sole Shareholder and Board of Directors of Warrington Associates, Inc., in Lieu of Special Meetings. In this agreement, *550 Warrington authorized and approved the issuance of shares of common stock of WAI to key employees in the following amounts: Name
Number of Shares
Thomas L. Dulany
1,650
Charles E. Keck
1,650
Richard H. Kohout
1,650
Jeffrey A. Longtin
660
Michael E. Murphy
330
Charles R. Gesme
330
James A. Fjeldsted
330
The resolution stated that the issuance of the shares was to employees who "have rendered great service to * * * [WAI] as employees and such services have significantly contributed to the earnings and growth of * * * [WAI] and to the value for which * * * [WAI] can be sold". Warrington, through the agreement, determined that "the value of the services rendered to * * * [WAI] by each of the aforesaid persons in excess of all salary and compensation paid to such person at least equals the par value of the stock to be issued to such person as a stock bonus". The issuance of the stock was conditional on the sale of WAI to SDI and the employees' agreeing to sell the WAI stock received to SDI. Also on January 28, 1985, Warrington went around to the seven employees who were to receive the stock and passed out the stock certificates. Warrington explained to each employee *551 what he was doing and apologized because the receipt of the stock would be taxable income. Warrington also had each of the employees execute a Conditional Stock Bonus Agreement. The Conditional Stock Bonus Agreement was a separate agreement between WAI and each individual employee who was to receive a stock bonus. The agreement restated that, because the employee had rendered great service to WAI as an employee, the employee was to receive stock in WAI. The receipt of the stock was conditional upon the sale of WAI to SDI and the employee's agreement to sell the stock received to SDI. On January 31, 1985, SDI and Warrington executed a Stock Purchase Agreement for the sale of all outstanding shares of WAI, including those issued to the seven employees, to SDI. On February 18, 1985, SDI acquired all the outstanding stock of WAI in exchange for an allotment of renounceable purchaser shares of SDI. Keck and Kohout each transferred their 1,650 shares of WAI stock to SDI, and they each received 51,965 shares of SDI stock having a fair market value of $ 250,000. On or about March 8, 1985, Keck and Kohout each received $ 250,000 for their SDI shares. WAI treated the stock bonus as *552 compensation and claimed a $ 1 million wage expense deduction. As of January 1, 1985, WAI had retained earnings of $ 4,046,861. The par value of the stock, $ 660, was charged to the capital stock account, and the balance of the value of the stock, $ 999,340, was charged to additional paid-in capital. The day after Warrington distributed the stock certificates, Keck and Kohout resigned from WAI. Warrington urged them to stay with the company after the sale, but they refused. They were disturbed at the way the transaction was handled and they felt that they should have received more money. Had Keck and Kohout continued to work for WAI after the sale, they would have been eligible to participate in the services agreement, a deferred compensation arrangement established to keep key employees after the sale. On or about March 31, 1985, WAI made deposits of the amount of Federal and State income taxes and employment taxes WAI determined to be due with respect to the WAI stock issued to the seven employees. Due to an oversight during the transaction, the tax was not withheld or collected at the time the proceeds of the sale of the WAI stock to SDI were remitted to the employees. *553 WAI, however, did collect the withholding taxes from each of the employees. Keck and Kohout each executed a promissory note to WAI in an amount equal to the withholding taxes WAI remitted to the revenue authorities. Keck and Kohout each paid the promissory notes. The employees other than Keck and Kohout reported the receipt of the WAI stock as compensation in an amount equal to the amount for which the WAI stock was sold to SDI. Keck and Kohout treated the receipt of the WAI stock as a gift and excluded from gross income the fair market value of the stock. OPINION Section 61(a) generally provides that "gross income means all income from whatever source derived, including * * * Compensation for services". Section 102 provides an exception to this general rule and states that "Gross income does not include the value of property acquired by gift". Whether a transfer is a gift or compensation is a question of fact. . Respondent contends that the stock bonuses WAI issued to Keck and Kohout are taxable as compensation for past services. Keck and Kohout argue that the stock bonuses were gifts and, therefore, *554 excluded from gross income. If the stock bonuses were compensation for past services, then SD-Scicon is entitled to a salary expense deduction and Keck and Kohout must include the amounts in gross income. If the stock bonuses were gifts, then SD-Scicon is not entitled to a compensation deduction. Petitioners bear the burden of proving that the payment was a gift. Rule 142(a). In , the Supreme Court stated that: This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, it is not a gift. And, conversely, "where the payment is in return for services rendered, it is irrelevant that the donor derives no economic *555 benefit from it." A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," "out of affection, respect, admiration, charity or like impulses." And in this regard, the most critical consideration, * * * is the transferor's "intention." [Citations and fn. refs. omitted.]
The record in this case does not indicate that the issuance of the stock proceeded from a detached and disinterested generosity. The resolution in which Warrington authorized the stock bonus, and the Conditional Stock Bonus Agreements signed by each employee, clearly stated that he issued the bonuses because the employees had rendered great service to WAI and had contributed greatly to the earnings and value of WAI. At trial, Warrington, the transferor, testified that the stock bonuses were compensation for past services and that he told each employee that the bonus would be taxable. Furthermore, WAI deducted the payment as salary expense, evidencing Warrington's view that the bonuses were compensation for past services. Not every transfer from an employer to an employee is automatically compensation. . *556 However, it is "the exceptional payment by an employer to an employee that amounts to a gift." Id. This is not that exceptional payment. Because Keck and Kohout had contributed so much to WAI over the years, Warrington had promised them that they would be taken care of if the company was ever sold. Warrington was fulfilling that promise, not making a gift. Keck even testified that he thought the stock bonus was not enough; therefore, he must have felt that Warrington owed him something for his contributions to WAI. It does not make sense to be disappointed that a gift was not sufficient, unless the amount was in exchange for some consideration which in this case was service to WAI. Based on the entire record, including petitioners' own testimony, we find nothing to indicate that the transfer of WAI stock was a gift and not compensation for past service. Therefore, Keck and Kohout must include the fair market value of the WAI stock as ordinary income, sec. 83(a), and SD-Scicon is entitled to deduct the amounts as compensation, sec. 83(h). Decision will be entered for respondent in docket No. 2361-91 except for the concession of the addition to tax under sec. 6661. *557 Decision will be entered for respondent in docket No. 2893-91. Decision will be entered for petitioner in docket No. 2900-91. Footnotes
1. Cases of the following petitioners are consolidated herewith: Richard H. Kohout and Janice E. Kohout, docket No. 2893-91; and SD-Scicon, Inc., Successor by Merger to S D North America, Ltd., docket No. 2900-91.↩